UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SEAN MURPHY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:22-cv-11646-IT |
| | * | |
| KAHANA VILLA VACATION CLUB[1] and | * | |
| SOLEIL MANAGEMENT, LLC, | * | |
| | * | |
| Defendants. | | |

MEMORANDUM & ORDER

April 25, 2023

TALWANI, D.J.

Plaintiff Sean Murphy, proceeding pro se, seeks a declaratory judgment and damages

against Kahana Villa Vacation Club ("Kahana Club") and Soleil Management, LLC ("Soleil")

(collectively "Defendants") for breach of contract, unfair and/or deceptive practices, and civil

rights violations under Massachusetts law related to the use of a time-share. Verified Compl.

¶¶ 1, 6-7 [Doc. No. 1-1]. Now pending before the court is Defendants' Motion to Set Aside Entry

of Default and Motion to Dismiss [Doc. No. 10]. For the following reasons, Defendants' Motion

is GRANTED.

**I.    Procedural History**

On May 4, 2022, Murphy filed his Verified Complaint in Bristol County Superior Court

for violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A §§ 1-11,

---

[1] Defendant contends that it was improperly named as "Kahana Villa" in the Verified Complaint
[Doc. No. 1-1], and that its true name is Kahana Villa Vacation Club. See Not. of Removal 1
[Doc. No. 1]. Where Murphy does not contest the correction of Defendant's name, see Opp.
[Doc. No. 14] (listing Defendant as Kahana Villa Vacation Club), the court's docket and caption
reflect Defendant's name as corrected.

the Massachusetts Civil Rights Act, Mass. Gen. Laws c. 12 §§ 11H, 11I, breach of contract, and declaratory judgement pursuant to Mass. Gen. Laws c. 231A. Id. Murphy alleges, inter alia, that in 2021 he paid approximately $7,000 towards his arrears due under his 2008 time-share contract with Kahana Club as requested by Defendants, who instructed Murphy that once he paid his arrears, the unused weeks would be automatically returned. Id. at ¶¶ 4-13. Murphy alleges further that after he made another payment, Defendants told him that he could not redeem any of his past weeks because the demand in Hawaii was high and attempted to "extort an additional $1,000 from Murphy by means of threats, intimidation and coercion." Id.  at ¶ 14-18. Murphy alleges that although Defendants eventually brought his account to zero as promised, id. at ¶ 22, Kahana Villa owners were not allowed to use their time-shares in 2020-2021 because of the flight restrictions due to the COVID-19 pandemic, id. at ¶ 23.

On September 15, 2022, the Bristol County Clerk of Court defaulted Defendants pursuant to Massachusetts Rule of Civil Procedure 55(a) for failure to plead or otherwise defend the case. Default Order [Doc. No. 1-4]. On September 20, 2022, Murphy filed his Motion for Default Judgment [Doc. No. 1-5]. On September 28, 2022, before the Superior Court acted on Murphy's motion, see State Court Record 5 [Doc. No. 9], Defendants removed the action based on diversity of citizenship between the parties, see Not. of Removal 1-3 [Doc. No. 1]. On October 5, 2022, Defendants filed the pending Motion to Set Aside Entry of Default and Motion to Dismiss [Doc. No. 10] for lack of personal jurisdiction, which Murphy opposes. See Opp. [Doc. No. 14].

## II.   Factual Background

### A.   *Facts as Relevant to the Motion to Set Aside Entry of Default*

Defendant Kahana Club is an association of residential unit owners that operates the Kahana Villa Vacation Club Resort ("Kahana Resort") located at 4242 Lower Honoapiilani

Road, Lahaina, HI 96761. Mano Decl. ¶ 4 [Doc. No. 11]; Verified Compl. ¶ 2 [Doc. No. 1-1]. On or about June 22, 2022, Murphy attempted to serve Kahana Club with the Superior Court Summons and Complaint through a part-time front-desk employee at the Kahana Resort, Kathleen Pascual. Kahana Return of Service [Doc. No. 1-3]; Mem. 2 [Doc. No. 13]. Pascual's duties at the Kahana Resort were limited to checking guests into their units; she was not authorized to accept new reservations, change existing reservations, supervise maintenance staff, or accept service of legal process on behalf of Kahana. Mano Decl. ¶¶ 5, 8-9 [Doc. No. 11].

Kahana Club's registered agent is Soleil Management Hawaii, LLC ("Soleil Hawaii"), for which Gary Mano is the registered agent. Mano Decl. ¶¶ 3, 10-11. [Doc. No. 11]. Soleil Hawaii's service address is 10 Ho'ohui Road, Suite 302, Lahaina, Hawaii 96761. Id. at ¶ 12. Kahana Club has no record of having been served with the summons or complaint in this lawsuit through its registered agent or otherwise. Id. at ¶ 13.

On or about June 10, 2022, Murphy attempted to serve Defendant Soleil with the Superior Court Summons and Complaint by serving Jeffery Owens at Soleil's service address of 7200 South Las Vegas Blvd., #A, Las Vegas, Nevada 89119. Soleil Return of Service [Doc. No. 1-2]; Mem. 2 [Doc. No. 13]. At the time, Owens was employed as the guest services manager at Tahiti Village Resort in Las Vegas and his duties included guest services, employee recruitment and training, and employee scheduling. Rodriguez Decl. ¶¶ 7, 10 [Doc. No. 12]. Owens was not an officer, managing agent, or registered agent of Soleil, and he was not in control "of the day-to-day operations" of Soleil. Id. at ¶¶ 8-9. Owens was not authorized to accept service of legal process on behalf of Soleil. Id. at ¶ 11.

Soleil's registered agent is Richard L. Rodriguez, id. at ¶ 5, and its managers include Rodriguez, Jennifer Cuthbert, and Robert Wagner, id. at ¶ 9. Soleil has no record of having properly been served with the summons and complaint. Id. at ¶ 12.

B.    *Jurisdictional Allegations and Facts in the Record*

Soleil is a Nevada limited liability company that provides management services in Nevada, Hawaii, California, and Florida. Rodriguez Decl. ¶¶ 3-4 [Doc. No. 12]. Kahana Club operates the Kahana Resort located in Hawaii, see Mano Decl. ¶ 4 [Doc. No. 11], and is managed by Soleil Hawaii, which is also located in Hawaii, id. at ¶ 3.[2] Neither Soleil nor Soleil Hawaii have offices in Massachusetts, manage any resort or conduct business in Massachusetts, or own or lease any real property in Massachusetts. Id. at ¶ 14; Rodriguez Decl. ¶ 14 [Doc. No. 12]. Further, neither Soleil nor Soleil Hawaii has a Massachusetts address or telephone number, pays taxes in Massachusetts, has any Massachusetts bank accounts, or has employees who work in Massachusetts. Mano Decl. ¶ 15 [Doc. No. 11]; Rodriguez Decl. ¶ 15 [Doc. No. 12].

In September 2008, Murphy, a Massachusetts resident, see Verified Compl. ¶ 1 [Doc. No. 1-1] upgraded his time-share at Kahana Resort, id. at ¶ 4. The time-share contract between Murphy and Kahana Club was signed by Murphy in Hawaii. Mano Decl. ¶ 17 [Doc. No. 11].

Murphy claims that all bills and invoices were sent to him in Massachusetts. Opp. ¶ 5 [Doc. No. 14]. In 2021, Murphy sought to pay Soleil his arrearages for the time-share. Verified Compl. ¶ 10 [Doc. No. 1-1]. Murphy spoke with Soleil employee Iris Caldwell and "Reservations," [3] and Murphy made payments to bring his account out of arrears. Id. at ¶¶ 14-15.

---

[2] Soleil Hawaii is not named in this action.

[3] The Verified Complaint [Doc. No. 1-1] does not specify whether "Reservations" was a department under Kahana Club or Soleil. See Compl. ¶¶ 16-24 [Doc. No. 1-1].

As alleged, Soleil misrepresented to Murphy that if he paid his arrearages, he would be able to redeem his weeks. <u>Id.</u> at ¶ 28.

On March 25, 2022, Murphy sent Kahana Club and Soleil demand letters pursuant to M.G.L. c. 93A describing the claimed unfair and deceptive practices and demanding all the money he applied to the time-share be returned to him. <u>Id.</u> at ¶ 29.

### III.   Motion to Set Aside Entry of Default

Defendants move to vacate the Superior Court's entry of default based on Murphy's failure to properly serve either defendant. Murphy argues that default was warranted where he properly served Defendants in their regular place of business. <u>See</u> Opp. 1 [Doc. No. 14].

A.   *Standard of Review*

Under Federal Rule of Civil Procedure 55(c), "the court may set aside an entry of default for good cause." However, "[t]here is no mechanical formula for determining whether good cause exists and courts may consider a host of relevant factors." <u>Indigo Am., Inc. v. Big Impressions, LLC</u>, 597 F.3d 1, 3 (1st Cir. 2010); <u>see also</u> <u>Com. Bank & Tr. Co. v. Ria LLC</u>, 314 F.R.D. 338, 340 (D. Mass. 2016) (internal quotations omitted) ("[Rule 55(c)] is also a liberal standard, but not so elastic as to be devoid of substance. It is a lower standard than that for vacating a judgment pursuant to Rule 60(b)."). Courts generally consider "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented." <u>McKinnon v. Kwong Wah Rest.</u>, 83 F.3d 498, 503 (1st Cir. 1996); <u>see</u> <u>KPS & Assocs., Inc. v. Designs By FMC, Inc.</u>, 318 F.3d 1, 12 (1st Cir. 2003). However, these factors are not exhaustive and other relevant factors include: "(4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; [and] (7) the timing of the motion [to set aside entry of default]." <u>KPS &</u>

Assocs., 318 F.3d at 12 (quoting McKinnon, 83 F.3d at 503); see also Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989). "[T]he burden of demonstrating good cause lies with the party seeking to set aside the default." Indigo Am., Inc., 597 F.3d at 3.

      B.    *Discussion*

First, Defendants argue that default was not willful where their failure to respond to Murphy's pleadings was not based on evasion of service, but rather a result of improper service to individuals who were not authorized agents. Mem. 5-6 [Doc. No. 13]. Murphy contends that both Defendants were properly served at their "normal and regular place of business" in adherence to the Massachusetts rules of service. Opp. ¶¶ 1-2 [Doc. No. 14].

Service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). Where Defendants do not move for dismissal based on insufficient process under Federal Rule of Civil Procedure 12(b)(5) or challenge sufficiency of service after the case was removed, but rather seek to remove the Superior Court's entry of default based on service prior to removal, Massachusetts rules regarding service of process apply. See In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 121 (D. Mass. 2006) (quoting Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 (7th Cir. 2001) ("In determining the validity of service prior to removal, a federal court must apply the law of the state under which the service was made."); see also Osborne v. Sandoz Nutrition Corp., 67 F.3d 289, 1995 WL 597215, at *1 (1st Cir. 1995) (unpublished) ("[S]tate law governs the service of process prior to removal to the district court.").

In Massachusetts, service can be made upon a corporation outside the Commonwealth "by delivering a copy of the summons and of the complaint to an officer, to a managing or

6

general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process[.]'" Mass. R. Civ. P. 4(d)(2), 4(e) (stating that service outside the Commonwealth can be effectuated in any manner prescribed by Mass. R. Civ. P. 4(d)). "The determination whether an individual is a 'managing or general agent' depends on a factual analysis of that person's authority within the organization." Jiang v. Tokyo II Steak House, Inc., 2022 WL 2905357, at *4 (D. Mass. July 22, 2022) (quoting Egan v. Tenet Health Care,193 F. Supp. 3d 73, 83 (D. Mass. 2016)). Additionally, service on a corporation outside the Commonwealth can be made, inter alia, in accordance with the law of the state in which service is made. Mass. R. Civ. P. 4(e).

Soleil's failure to respond is not willful where Murphy's service on Soleil through guest service manager Owens was insufficient under both Massachusetts and Nevada law.[4] Owens was neither a managing nor general agent, officer, or director of Soleil where his duties involved the oversight of guest services at the front desk, recruiting and training new employees, and scheduling of employees. His responsibilities do not indicate that he had high-powered authority within the company, but rather are indicative of an employee without authoritative or decision-making role in the company. Even though Murphy delivered the summons and complaint to Owens at Soleil's registered service address in Nevada, see Soleil Return of Service [Doc. No. 1-2], the rules require delivery to a specific person authorized to accept service, not simply the

---

[4] Under Nevada Rule of Civil Procedure 4.2(1)(A), service upon an entity or association may be made by delivering a copy of the summons and complaint to: "(i) the registered agent of the entity or association; (ii) any officer or director of a corporation… (v) any member of a member-managed limited-liability company; (vi) any manager of a manager-managed limited-liability company…; (ix) any managing or general agent of any entity or association; or (x) any other agent authorized by appointment or by law to receive service of process."

place of business. Further, although Owens was present at the Soleil offices, there are no facts to suggest that that he was "the person in charge of the business at the principal place of business." See Mass. R. Civ. P. 4(d)(2). Rodriguez's statement that he is in fact the registered agent for Soleil, and that Owens was not authorized to receive service, is sufficient to refute the prima facie presumption of proper service. See Jiang, 2022 WL 2905357, at *4; see also Blair v. City of Worcester, 522 F.3d 105, 112 (1st Cir. 2008) ("Under Massachusetts law, an affidavit is sufficient to refute the prima facie presumption created by a return of service").

Similarly, Kahana Club's failure to respond to Murphy's pleadings is not willful where service was insufficient under Massachusetts and Hawaii law.[5] As a part-time employee, with limited job duties, Pascual did not have a high degree of authority at Kahana Club that would make service upon her equivalent to proper service upon the company. Although Kahana Club's Return of Service [Doc. No. 1-3] states that Pascual was "authorized to accept documents," the ability to accept documents—such as mail or delivery packages—is an entirely different type of authority than the ability to accept service of process on behalf of a company for lawsuits brought against it. Jiang, 2022 WL 2905357, at *4 (authority to accept service "can only be created by the words or actions of a principal, not its purported agent"). Further, Murphy attempted service at the Kahana Resort, which is not the registered service address for Kahuna Club's registered agent, Soleil Hawaii. Accordingly, as neither Soleil nor Kahana Club were properly served, it cannot be said that either Defendant willfully defaulted in the state court proceeding. Therefore, this factor cuts in favor of Defendants.

---

[5] Under Hawaii Rule of Civil Procedure 4(d)(3), a corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process[.]"

The second factor—whether setting the default aside would prejudice the adversary—also cuts in Defendants' favor. "The issue is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion." FDIC v. Francisco Inv. Corp., 873 F.2d 474, 479 (1st Cir. 1989). Murphy contends that Defendants removed the case to federal court in order to gain an advantage by way of jurisdictional defenses. Opp. ¶¶ 4-5 [Doc. No. 14]. However, this argument is unrelated to the dangers accompanying delay. Rather, the suit would simply proceed, and the court would go on to determine Defendants' motion to dismiss separately.

The third factor—whether Defendants have a meritorious defense—also weighs in Defendants' favor. "Establishing the existence of a meritorious defense is not a particularly arduous task. '[A] party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.'" Indigo Am., Inc., 597 F.3d at 3 (quoting Coon, 867 F.2d at 77); see also Conetta v. Nat'l Hair Care Centers, Inc., 236 F.3d 67, 75 (1st Cir. 2001) (noting, in discussing the meritorious defense requirement, that the defendant had an "arguable defense on some aspects of the claims against it"). Defendants have met their burden where they argue that Murphy's Verified Complaint [Doc. No. 1-1] should be dismissed for lack of personal jurisdiction. See Sec. IV.B, infra.

With respect to the remaining factors, all either have neutral bearing or cut in favor of Defendants. Defendants' explanation for default—that they were not properly served—is valid, as described above. Further, the court is unaware of any bad faith conduct by any party that would suggest the evasion of service or that Defendants intentionally did not respond in the state court proceeding. Lastly, Defendants acted promptly in filing the present motion within three weeks of entry of default. See Key Bank of Maine v. Tablecloth Textile Co., 74 F.3d 349, 355

(1st Cir. 1996) (finding the motion to set aside default judgement was reasonably timely in light of the fact that defendants had only learned of the default judgement a month prior).

Accordingly, the court finds good cause to set aside the entry of default against Defendants.[6]

## IV.    Motion to Dismiss

Defendants move to dismiss all claims against them for lack of personal jurisdiction. Mem. 7 [Doc. No. 13]. Murphy opposes dismissal, arguing that the court has personal jurisdiction over Defendants. Opp. ¶ 5 [Doc. No. 14].[7]

### A.  *Standard of Review*

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Inves., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, the court applies the "prima facie standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995). To make a prima facie showing of jurisdiction, a plaintiff cannot

---

[6] Where Murphy requests the opportunity to re-serve Defendants via the United States Marshal Service, see Opp. 3 [Doc. No. 14], such request is moot where Defendants have appeared in this case and are not seeking dismissal for insufficient service of process.

[7] Murphy also argues that Defendants "cannot remove this action to federal court just to claim jurisdictional defenses." See Opp. ¶ 5 [Doc. No. 14]. However, in a diversity suit, where the court acts as "the functional equivalent of a state court sitting in the forum state," see Astro–Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009) (internal quotations omitted), Defendants' removal to state court has no bearing on whether the court has personal jurisdiction over Defendants.

rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 987 F.2d 39, 44 (1st Cir. 1993).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Cossart, 804 F.3d at 18 (quoting Sawtelle, 70 F.3d at 1387). Thus, in order to establish personal jurisdiction over the Defendants, Murphy "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." Id. "The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (citation omitted).

B.    *Discussion*

Defendants contend that they have not submitted to the jurisdiction of courts in Massachusetts where neither entity is incorporated or conducts business in Massachusetts, and where Murphy's claims do not arise from or relate to any action by Defendants in Massachusetts. Mem. 11 [Doc. No. 13]. Murphy counters that his residency in Massachusetts at the time he entered into the contract with Defendants and the fact that all bills and invoices regarding the time-share were sent from Defendants to Murphy in Massachusetts are enough to hail Defendants into Massachusetts courts. Opp. ¶ 5 [Doc. No. 14].

The due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle, 70 F.3d at 1388 (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). Thus, a court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

1.     General Jurisdiction

"General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'" Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Phillips Exeter Acad., 196 F.3d at 288). "To permit the exercise of general jurisdiction, the defendant must 'engage[ ] in the 'continuous and systematic' pursuit of general business activities in the forum state.'" Id. at 32 (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)). Contacts must not only be "continuous and systematic," but also such that the corporation is rendered "at home" in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). While the Supreme Court has left open "the possibility that in an exceptional case" a corporation might be "at home" elsewhere, Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014), the Court continues to cite a corporation's place of incorporation and principal place of business as the paradigm factors, see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021). For purposes of the general jurisdiction analysis, the court "consider[s] all of a defendant's contacts with the forum state prior to the filing of the lawsuit." Cossaboon, 600 F.3d at 29 (quoting Harlow v. Children's Hosp., 432 F.3d 50, 65 (1st Cir. 2005)).

Here, neither Kahana Club nor Soleil is incorporated or has its principal place of business in Massachusetts.[8] See Mem. 10 [Doc. No. 13]; Opp'n ¶¶ 2, 5 [Doc. No. 14]. Furthermore, this case does not present any exceptional circumstances in which Defendants' general business operations in Massachusetts are so unusually substantial that either corporation can fairly be described as "at home" in the state where neither Kahana Club or Soleil have offices, employees, property, bank accounts, or contact information in Massachusetts. See Mano Decl. ¶¶ 14-16 [Doc. No. 11]; Rodriguez Decl. ¶¶ 13-15 [Doc. No. 12].

Accordingly, general jurisdiction may not be exercised over Defendants in the state of Massachusetts.

2.     Specific Jurisdiction

"'Specific personal jurisdiction . . . may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Warren Envtl., Inc. v. Source One Envtl., Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)). "Questions

---

[8] Murphy argues that this court should exercise jurisdiction because Defendants would attempt the same defenses where they maintain principal places of business in two different states – namely, Hawaii and Nevada. The court may not exercise personal jurisdiction based on potential defenses in other forums. Murphy's concern that there may not be a single forum where both Defendants may be sued ignores the possibility that defendants with principal places of business in two different states may be sued in a single jurisdiction where appropriate based on specific jurisdiction.

of specific jurisdiction are always tied to the particular claims asserted" and thus the inquiry must be conducted "on a claim-by-claim basis." Phillips Exeter Acad., 196 F.3d at 289.

"As the First Circuit has stated, the relatedness requirement—'that a suit arise out of, or be related to' [d]efendant's forum activities—'ensures that the element of causation remains in the forefront.'" Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d 176, 186 (D. Mass. 2002) (quoting Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994)). "Relatively speaking, the relatedness inquiry is to be resolved under 'a flexible, relaxed standard.'" Baskin-Robbins, 825 F.3d at 35 (quoting Pritzker, 42 F.3d at 61).

"There is a natural blurring of the relatedness and purposeful availment inquiries in cases (like this one) in which the alleged contacts are less tangible than physical presence; in such circumstances, an inquiring court must determine the extent to which the defendant directed an out-of-state activity at the forum state in order to ascertain whether the activity can be termed a contact at all." Phillips Exeter Acad., 196 F.3d at 289. "This determination bears at least a family resemblance to a determination of whether a defendant purposefully availed himself of the protections of the forum state. Notwithstanding this resemblance, however, the inquiries are different . . ." Id.

"The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Cossaboon, 600 F.3d at 32 (internal quotation marks and citation omitted). Under the third and final requirement, the exercise of jurisdiction must be "reasonable under the circumstances." Id.

Here, although Defendants sent Murphy bills in Massachusetts, and in turn accepted Murphy's payments from Massachusetts, Murphy's causes of action do not arise out of those contacts. As to the breach of contract claim, the time-share contract at issue was signed in Hawaii for services in Hawaii. See Vapotherm, Inc. v. Santiago, 38 F. 4th 252, 258-59 (1st Cir. 2022) (quoting Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007)) ("For breach of contract claims, 'we ask whether the defendant's activity in the forum state was []instrumental either in the formation of the contract or its breach.'"). Further, any potential breach of the contract by Defendants as to Murphy's claims that he was not able to use the time-share despite his payments would have occurred in Hawaii and/or Nevada, where Defendants are located. See Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28-29 (1st Cir. 2008) (finding in a contract suit that defendant's awareness of plaintiff's location in forum state, combined with defendant's occasional transmission of contract-related communications into forum state, was insufficient to establish defendant's purposeful availment of forum state). Finally, communications sent to Murphy in Massachusetts carry little weight as to his contract claims since "a contract arguably is breached where a promisor fails to perform" rather than where it communicates such a breach. Phillips Exeter Acad., 196 F.3d at 291.

Similarly, the court does not have specific jurisdiction over Murphy's statutory claims. To the extent that Murphy alleges that Defendants communicated false and/or coercive statements to him in Massachusetts, Murphy has sufficiently demonstrated relatedness insofar as his statutory claims arise from those misrepresentations. However, Murphy has not satisfied his burden as to purposeful availment where there are no facts that demonstrate that Defendants targeted Massachusetts such that claims against them would be foreseeable. To determine whether the court can exercise jurisdiction over the statutory claim, the court must consider

whether Defendants' "specific targeting of a forum's residents may show voluntariness" and Defendants' "regular course of sale in the forum' [may] make the exercise of jurisdiction foreseeable." <u>Motus, LLC v. CarData Consultants, Inc.,</u> 23 F.4th 115, 124 (1st Cir. 2022) (quotation marks and citation omitted) (alterations in original). As previously discussed, Defendants do not have a presence in Massachusetts such that their voluntary actions would have "fair warning" that "a particular activity" "may subject [them] to the jurisdiction of" courts in Massachusetts. <u>See</u> <u>Ford Motor Co.,</u>141 S. Ct. at 1025; <u>see also</u> <u>Walden v. Fiore,</u> 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Accordingly, specific jurisdiction may not be exercised over Defendants in the state of Massachusetts.[9]

### V.   Conclusion

For the foregoing reasons, Defendants' <u>Motion to Set Aside Entry of Default and Motion to Dismiss</u> [Doc. No. 10] is GRANTED.

IT IS SO ORDERED.

April 25, 2023                                     /s/      Indira Talwani
                                                   United States District Judge

---

[9] Having found that under constitutional requirements, Murphy's contract claim is not sufficiently related to Defendants' contacts with Massachusetts, and that Defendants did not purposefully avail themselves to Massachusetts to sustain the statutory claims, the court need not consider the remaining prongs of the due process analysis. Further, the court does not reach jurisdictional arguments under the Massachusetts long-arm statute where Murphy has not sustained his burden under constitutional standards. <u>See</u> <u>Cossart</u>, 804 F.3d at 18 (holding that jurisdiction must be conferred under both constitutional due process and statutory schemes).